# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

========================

## ON MOTION FOR REHEARING

========================

### NO. 03-04-00207-CR

**Daniel Ray Mendez, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT
NO. 2001-114, HONORABLE DON B. MORGAN, JUDGE PRESIDING**

## O P I N I O N

Our opinion and judgment issued on May 4, 2006, are withdrawn, and the following opinion is substituted.

A jury found appellant Daniel Ray Mendez guilty of aggravated assault and assessed punishment, enhanced by a previous felony conviction, at imprisonment for twenty years. *See* Tex. Pen. Code Ann. § 22.02 (West Supp. 2005). Mendez contends that he was denied his right to a speedy trial, his retrial following an earlier mistrial constituted double jeopardy, and his punishment was unlawfully enhanced. We will remand for a new punishment hearing.

## *Speedy Trial*

In point of error four, Mendez contends that the trial court should have granted his motion to dismiss for want of a speedy trial. *See* U.S. Const. amends. VI, XIV; Tex. Const. art. I, § 10; *Barker v. Wingo*, 407 U.S. 514 (1972); *Hull v. State*, 699 S.W.2d 220, 221 (Tex. Crim. App. 1986). Appellate review of a trial court's decision to grant or deny a speedy trial claim is conducted de novo. *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997). In conducting this review, we balance four factors: length of delay, reason for delay, assertion of the right, and prejudice to the accused. *Barker*, 407 S.W.2d at 530; *Johnson*, 954 S.W.2d at 771.

### *Length of delay*

The length of delay is measured from the date the defendant was arrested or formally charged. *Rivera v. State*, 990 S.W.2d 882, 889 (Tex. App.—Austin 1999, pet. ref'd). Mendez was arrested on March 6, 2001, and he was indicted two months later. He has been in continuous custody since his arrest. Mendez's motion to dismiss for want of a speedy trial was overruled on February 20, 2003. His first trial began on February 24 and ended in a mistrial two days later. The second trial, which resulted in this conviction, began on May 19, 2003.

As the State concedes, the twenty-three-month delay in this cause is sufficient to trigger a full *Barker* analysis. *See Doggett v. United States*, 505 U.S. 647, 651-52 (1992). Because the delay stretched well beyond the minimum needed to trigger the inquiry, this factor weighs heavily against the State. *Zamorano v. State*, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002).

2

### *Reason for delay*

It appears that Mendez was first scheduled to be tried on November 19, 2001. On November 16, Mendez's counsel filed a motion for continuance based on a conflicting trial setting. Although no action on the motion is indicated in the record, Mendez was not tried as scheduled. On April 23, 2002, Mendez filed a motion for speedy trial asking for a prompt trial setting. Two days later, the State filed a motion for continuance on the ground that it had been unable to locate the complainant and another witness. The motion was granted and the cause was reset for August 2002. A few days before the August trial setting, Mendez's attorney was allowed to withdraw due to a conflict of interest and new counsel was appointed. Mendez was not tried as scheduled, but it is unclear whether the case simply was not reached or if new counsel asked for additional time to prepare. The next trial setting was January 27, 2003. On that date, the State requested another continuance, again citing its inability to secure the presence of its witnesses. Defense counsel responded by filing Mendez's motion to dismiss for want of a speedy trial. The court granted the State a further continuance and scheduled a hearing on Mendez's motion to dismiss for February 20. After the motion to dismiss was overruled, Mendez's first trial began on February 24.

Mendez does not contend that the delay between March 2001, when he was arrested, and April 2002, when the State was granted its first continuance, was unjustified. This accounts for over half of the total delay between the time of arrest and the start of the first trial. Of the remaining ten months, five are attributable to the State's requested continuances due to the absence of its witnesses. It has been held that the absence of a witness is a valid reason for delay and should not be held against the State. *Barker*, 407 U.S. at 531. The postponement of trial from August 2002 to

January 2003 is attributable, at least in part, to the change in defense counsel. Thus, most of the delay in Mendez's trial is either unchallenged or justifiable. This weighs against a finding of a constitutional violation.

### Assertion of right

Mendez asserted his right to a speedy trial in April 2002, and reasserted it in January 2003. This weighs in his favor. *Zamorano*, 84 S.W.3d at 651-52.

### Prejudice

The speedy trial act serves to prevent oppressive pretrial incarceration, minimize anxiety resulting from the pending charges, and limit the possible impairment of the defense. *Barker*, 407 U.S. at 532. Although Mendez was continuously incarcerated following his arrest, it was undisputed below that he was also being held on a parole revocation warrant and thus would have been in custody in any case. Mendez offered no evidence of actual prejudice to the defense resulting from the delay of his trial. In his brief, he asserts that anxiety and prejudice should be inferred merely from the fact of the delay. *See Zamorano*, 84 S.W.3d at 654. On this record, the prejudice prong affords Mendez slight support at best.

### Balancing

Two of the factors—the length of delay and the assertion of right—weigh in Mendez's favor. One factor—reason for the delay—weighs against a finding of a constitutional violation. The remaining factor—prejudice—is essentially neutral on this record. In light of the

4

justification for most of the delay, we conclude that, on balance, Mendez's constitutional speedy trial right was not violated. Point of error four is overruled.

### *Double Jeopardy*

The first trial of this cause ended in a mistrial on Mendez's motion. In points of error two and three, Mendez urges that double jeopardy principles barred his retrial. *See* U.S. Const. amends. V, XIV; Tex. Const. art. I, § 14. Under the Fifth Amendment, a defendant who successfully moves for a mistrial cannot be retried if the mistrial motion was prompted by prosecutorial conduct "intended to 'goad' the defendant into moving for a mistrial." *Oregon v. Kennedy*, 456 U.S. 667, 676 (1982). Under the Texas Constitution, retrial is also barred if the prosecutor "was aware [of] but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request." *Bauder v. State*, 921 S.W.2d 696 (Tex. Crim. App. 1996).

Trial and appellate courts analyzing a double jeopardy mistrial claim must make a three-part analysis: (1) was the mistrial provoked by manifestly improper prosecutorial misconduct, (2) was the prejudice resulting from the misconduct incurable, and (3) did the prosecutor engage in the misconduct with the intent to goad the defendant into requesting a mistrial (*Kennedy*) or with a conscious disregard for a substantial risk that a mistrial would be required (*Bauder*). *Ex parte Peterson*, 117 S.W.3d 804, 816-17 (Tex. Crim. App. 2003). The burden of proof is on the defendant to prove his *Kennedy/Bauder* claim by a preponderance of the evidence. *Id*. at 818. Appellate courts

5

defer to the trial court's findings of fact but review de novo those mixed questions of law and fact that do not depend upon credibility and demeanor. *Id*. at 819.

The relevant facts are not disputed. In January 2002, a year before Mendez's first trial began, the prosecutor then handling the case sent a letter to the attorney then representing Mendez notifying him that the State intended to use Mendez's previous felony convictions to enhance punishment. *See Brooks v. State*, 957 S.W.2d 30, 33-34 (Tex. Crim. App. 1997) (required notice of previous convictions to be used for enhancement need not be given in indictment). A new attorney was appointed to represent Mendez in August 2002, and new prosecutors were assigned to the case in January 2003. When trial began in February 2003, both sides voir dired the jury panel on the range of punishment for an unenhanced second degree felony. Two days later, just before testimony was to begin, the prosecutors brought the January 2002 letter to the attention of defense counsel and said that the State would be seeking an enhanced punishment. Defense counsel moved for a mistrial on the ground that he had been denied an opportunity to question the potential jurors regarding the higher range of punishment. The motion was granted, and the instant trial began three months later.

We hold that Mendez did not demonstrate by a preponderance of the evidence that his mistrial motion was provoked by manifestly improper prosecutorial misconduct. At the hearing on the motion, the prosecutors informed the court that they had discovered the notice letter only that morning just before speaking to defense counsel and they pointed out that the State had also failed to voir dire the jury panel on the higher range of punishment. In short, the record reflects that, like defense counsel, the prosecutors did not timely discover the notice letter that was in the record and were not attempting to sandbag the defense. The prosecutors had the discretion to pursue an

6

enhanced punishment, and after they belatedly discovered that adequate notice had been given, they opted to do so. This exercise of prosecutorial discretion did not become an act of prosecutorial misconduct merely because it led to Mendez's motion for mistrial. The mistrial was not provoked by prosecutorial misconduct, but by the trial court's belief that the parties should have an opportunity to voir dire the jury regarding the enhanced penalty range. Points of error two and three are overruled.

### *Enhancement Procedure*

The State's only punishment witness was a police officer who identified appellant's fingerprints in the penitentiary records introduced by the State to prove Mendez's two previous nonsequential felony convictions. After the State rested, defense counsel brought it to the court's attention that Mendez had not entered his plea to the enhancement allegations. When the court said, "We'll just do it now," Mendez objected that it was too late and asked the court for a "directed verdict . . . that this enhancement provision is not applicable." The objection and motion were overruled, the State read the enhancement allegations, and Mendez entered his plea of not true before the jury. The officer's testimony was not reoffered or stipulated. Mendez now contends that the evidence properly before the jury does not support the jury's finding that he had been previously convicted.

It has long been the rule that the reading of the enhancement allegations and the entry of the defendant's plea thereon are mandatory, and that no issue is joined between the State and the defendant with respect to the defendant's prior criminal record if this is not done. *Turner v. State*,

7

897 S.W.2d 786, 788 (Tex. Crim. App. 1995); *Welch v. State*, 645 S.W.2d 284, 285 (Tex. Crim. App. 1983). When, as here, the error is discovered after the State rests at the punishment stage, the correct procedure is to allow the State to reopen, read the enhancement allegations, take the plea, and reintroduce or stipulate the previously introduced evidence. *Welch*, 645 S.W.2d at 285. It is error to permit the jury to consider enhancement evidence admitted before the entry of the defendant's plea. *Id*.

The State urges that Mendez failed to preserve this matter for review by failing to object to the officer's testimony when it was offered. We disagree. *Welch* makes it clear that an objection at any point during the penalty stage is sufficient to preserve the error and require the corrective action prescribed in that opinion. And more recently, the court of criminal appeals has held that when, as here, the enhancement allegations are not contained in the indictment, the failure to read them at the start of the penalty stage does not put the defendant on notice that "the proceedings may have gone amiss" and thus no objection is required at that time. *Marshall v. State*, No. PD-2016-04, 2006 Tex. Crim. App. LEXIS 360, at *9 (Tex. Crim. App. Feb. 15, 2006).

The failure to timely read the enhancement allegations and take Mendez's plea was brought to the attention of the trial court and the State at a time when it was possible to correct the error. At that point, the State was obligated to either abandon the enhancement allegations or to correct the error in the manner prescribed in *Welch*. Although the State belatedly read the enhancement allegations and Mendez entered his plea, the State failed to reoffer its evidence as required by *Welch*. We hold that Mendez did all that was required to preserve this error for appeal and that no further objection was necessary.

8

In *Turner*, the court held that harmless error analysis was inapplicable to error of the sort presented here. *Turner*, 897 S.W.2d at 789. The court has since held, however, that except for a narrow group of federal constitutional errors, no error is categorically immune to a harmless error analysis. *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (overruling "any other decision [that] conflicts with the present opinion"). We therefore turn to the question of whether Mendez's substantial rights were affected. *See* Tex. R. App. P. 44.2(b).

The only evidence that Mendez had been previously convicted was introduced before he entered his plea to the enhancement allegations. This evidence was not properly before the jury, and it is clear that the jury's consideration of this evidence for the purpose of enhancement harmed Mendez. *Welch*, 645 S.W.2d at 285. Because there was no properly admitted evidence to support the enhancement allegations, the jury should have limited its deliberations to the range of punishment applicable to an unenhanced second degree felony: two to twenty years. *See* Tex. Pen. Code Ann. § 12.33 (West 2003). Although the punishment assessed was within that range, we cannot assume that the jury was uninfluenced by the first degree felony punishment range it was improperly authorized to apply. We are not satisfied that the jury would have assessed the same twenty-year punishment had it known that this was the *maximum* applicable penalty. We therefore conclude that the error affected a substantial right.

Because the error relates to punishment only, we will reverse and remand for a new punishment determination. Tex. Code Crim. Proc. Ann. art. 44.29(b) (West Supp. 2005). We note that the error does not have double jeopardy implications and the State may seek an enhanced

punishment upon remand. *Welch*, 645 S.W.2d at 286; *see Bell v. State*, 994 S.W.2d 173, 175 (Tex. Crim. App. 1999).

The judgment is reversed and the cause is remanded for a new punishment hearing.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Reversed and Remanded

Filed:   June 2, 2006

Publish