# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00584-CR

**Danny Lee Yeakley, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-08-493, HONORABLE WILLIAM HENRY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Danny Lee Yeakley of the felony offense of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04(a) (West 2003), § 49.09(b)(2) (West Supp. 2010). Punishment, enhanced by two prior felony convictions for the offenses of theft and driving while intoxicated, was assessed at 27 years' imprisonment. In two issues on appeal, Yeakley asserts that the district court abused its discretion by denying his motion to suppress and erred by failing to receive Yeakley's plea to the State's enhancement allegations. We will affirm the judgment.

## BACKGROUND

At the hearing on the motion to suppress, the district court heard evidence that on June 6, 2008, at approximately 6:40 p.m., Officer Jason Scott of the San Marcos Police Department was on patrol duty and headed southbound on IH-35 when he observed a vehicle in the right lane of traffic "move[] partway over into the center lane" for what Scott perceived to be "a significant

amount of distance," specifically "several car lengths." Scott did not observe the vehicle signal a lane change. When asked to describe the vehicle's position in the two lanes, Scott testified, "The two left wheels of the vehicle were crossed over into the center lane several feet and the vehicle was mostly in the right lane and probably about a quarter of the vehicle was in the center lane." Scott also observed that there were two other vehicles immediately around the suspect vehicle—"a vehicle behind it" and a vehicle "on the left side that was approaching or was driving alongside me and I was in the center lane." Scott continued, "I was driving normally. And as I approached that vehicle, I had to use my brake to keep from getting too close to that vehicle." Scott believed that if he had not braked, "I could have potentially struck the vehicle."

When asked to characterize the vehicle's movement into the center lane, Scott testified, "I believe it was a dangerous movement based upon the time of day and the traffic flow and the fact that I had to adjust my driving due to the vehicle being in my lane." Scott elaborated, "[T]here was traffic on the roadway; the vehicles around me, I know, were traveling pretty much at . . . the posted speed limit; I had to adjust my speed . . . in order to prevent approaching the vehicle at an unsafe distance." Scott also observed the vehicle to the right of him "already being cautious" because of the "suspect vehicle's movements." Scott added, "They had already started to slow down as I was moving forward."

Scott's patrol vehicle was equipped with a video camera that recorded the suspect vehicle's movements. A DVD of the recording was admitted into evidence and played for the district court. In the video, the suspect vehicle can be seen drifting into the center lane for approximately eight seconds and then returning to the right lane.

2

After "observ[ing] the vehicle a little bit longer," Scott activated his overhead lights and initiated a traffic stop. Scott subsequently identified Yeakley as the driver of the vehicle. Scott testified that the basis for the stop was his belief that Yeakley had committed the offense of "failure to maintain a single lane." *See* Tex. Transp. Code Ann. § 545.060(a) (West 1999).

On cross-examination, Scott testified that other than his vehicle and the one immediately behind Yeakley's vehicle, he observed no other vehicle take any evasive action in response to Yeakley's movement into the center lane. Scott estimated that he and the other cars around him were traveling at approximately the posted speed limit of 70 miles per hour, although Scott estimated that Yeakley's vehicle was traveling approximately five to ten miles per hour below the speed limit. Scott agreed with defense counsel's characterization of Yeakley's movement into the center lane as more of a slow "drift" than an abrupt "swerve," and he also agreed with defense counsel's characterization of Yeakley's movement as more of a "potentially" unsafe condition than an "actual" unsafe condition. However, according to Scott, this was only because his vehicle and the other vehicle were able to apply their brakes in order to maintain a safe distance behind Yeakley's vehicle.

Following Scott's testimony, defense counsel argued that there was no basis for the traffic stop because Yeakley's movement into the center lane did not create an actual unsafe condition. *See Hernandez v. State*, 983 S.W.2d 867, 871 (Tex. App.—Austin 1998, pet. ref'd) (holding that violation of section 545.060 of transportation code occurs "only when a vehicle fails to stay within its lane *and* such movement is not safe or is not made safely"). The district court denied the motion to suppress, and the case proceeded to trial.

3

At trial, in addition to the above evidence, the jury heard further testimony from Scott regarding his observations of Yeakley following the traffic stop. Scott testified that upon making contact with Yeakley, he "could smell the odor of alcohol coming from the vehicle," "saw that his eyes were glassy and bloodshot," and observed that his "speech was somewhat slurred." When Scott asked Yeakley if he had been drinking, Yeakley initially denied having had anything to drink. Scott then asked Yeakley to exit the vehicle. As Yeakley did so and Scott continued questioning him, Scott "could tell that the odor of alcohol was not coming from inside the vehicle but from Mr. Yeakley." Scott also observed that Yeakley was "a little unsteady on his feet" and "very erratic in his movement." Scott again asked Yeakley if he had been drinking, and this time Yeakley admitted to having drank "two beers." Scott testified that he then administered the horizontal gaze nystagmus test on Yeakley and observed six out of six possible "clues" indicating intoxication. At that point, Scott decided to arrest Yeakley for driving while intoxicated.

The State's only other witness was Officer Jesse Saavedra of the San Marcos Police Department, who inventoried and impounded Yeakley's vehicle following the arrest. Saavedra testified that inside the vehicle, he found an open can of beer that was "cool to the touch" and an ice chest that contained three or four unopened cans of beer. Also admitted into evidence for the jury's consideration were DVD recordings of the traffic stop, Yeakley's transport to the police station, and statements Yeakley had made to the police while at the station.

The jury found Yeakley guilty of the offense of driving while intoxicated, and the case proceeded to punishment. At the beginning of the punishment hearing, the State alleged for enhancement purposes a prior conviction for felony driving while intoxicated and two prior

4

convictions for felony theft.[1]  The enhancement allegations were read to the jury as required by article 36.01 of the code of criminal procedure.  However, contrary to article 36.01, the district court immediately thereafter proceeded to allow the State to present its evidence in support of the allegations, without first receiving Yeakley's plea to the allegations.  Yeakley did not object to this procedure at any point during or after trial.  The jury subsequently found the enhancement allegations to be true and assessed punishment at 27 years' imprisonment.  This appeal followed.

## ANALYSIS

**Motion to suppress**

In his first issue, Yeakley asserts that his motion to suppress should have been granted because his failure to maintain a single lane of traffic did not create an actual unsafe condition. Thus, in Yeakley's view, there was no legal basis for the traffic stop.

A trial court's ruling on a motion to suppress is reviewed on appeal for abuse of discretion.  *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).  The trial court is given almost complete deference in its determination of historical facts, especially if those are based on an assessment of credibility and demeanor.  *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).  The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor.  *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006).  However, for mixed questions of law and fact that do not fall within that

---

[1] At the close of its case, the State abandoned one of the two theft allegations.

5

category, a reviewing court conducts a de novo review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007).

The trial judge is the exclusive fact-finder at the suppression hearing. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When the trial court does not make express findings of fact, an appellate court must view the evidence in the light most favorable to the trial court's ruling, assuming that it made any implicit findings of fact that are supported by the record. *Id*. An appellate court will sustain the trial court's decision if it concludes that the decision is correct on any theory of law applicable to the case. *Id*. at 855-56.

An officer may initiate a traffic stop if he reasonably suspects that the driver has committed a traffic violation. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has, or soon will be, engaged in criminal activity. *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). In making this determination, we consider the totality of the circumstances. *Ford*, 158 S.W.3d at 492; *Garcia*, 43 S.W.3d at 530.

Here, the alleged traffic violation was the failure to maintain a single lane. *See* Tex. Transp. Code Ann. § 545.060(a). A person commits this offense when his "vehicle fails to stay within its lane *and* such movement is not safe or is not made safely." *Hernandez*, 983 S.W.2d at 871. If the vehicle only fails to stay within its lane, without that movement being unsafe to one's self or another, no violation exists. *See, e.g.*, *Eichler v. State*, 117 S.W.3d 897, 900-01 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *State v. Cerny*, 28 S.W.3d 796, 800-01

6

(Tex. App.—Corpus Christi 2000, no pet.); *Aviles v. State*, 23 S.W.3d 74, 78 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Ehrhart v. State*, 9 S.W.3d 929, 930 (Tex. App.—Beaumont 2000, no pet.); *Hernandez*, 983 S.W.2d at 871-72; *State v. Tarvin*, 972 S.W.2d 910, 912 (Tex. App.—Waco 1998, pet. ref'd). Thus, in order to uphold a traffic stop based solely on a violation of section 545.060, the record must contain specific, articulable facts that, when combined with reasonable inferences from those facts, would lead the detaining officer to reasonably suspect that the failure to maintain a single lane was unsafe under the circumstances.

There are such facts in this case. Officer Scott testified that the violation occurred at approximately 6:40 p.m. on IH-35 in San Marcos. According to Scott, there was other traffic on the highway at that time, including two other vehicles that were near Yeakley's vehicle. The posted speed limit was 70 miles per hour, and Scott testified that he and the other vehicles around him were traveling at approximately that speed. Yeakley's vehicle, however, was traveling approximately five to ten miles per hour below the posted speed limit. When Yeakley's vehicle drifted into the center lane for what Scott perceived to be "a significant amount of distance," specifically "several car lengths," no lane change was signaled and Scott had to "adjust [his] speed . . . in order to prevent approaching the vehicle at an unsafe distance." Scott further testified that if he had not applied his brakes, he "could have potentially struck the vehicle." Additionally, according to Scott, the vehicle immediately behind Yeakley's vehicle was "already being cautious" because of the "suspect vehicle's movements." Scott recounted, "They had already started to slow down as I was moving forward." Scott's testimony is confirmed by the video recording of the traffic stop, which shows Yeakley's vehicle drift into the center lane of traffic for approximately eight seconds. Scott summarized why he believed Yeakley's movement was unsafe: "I believe it was a dangerous

7

movement based upon the time of day and the traffic flow and the fact that I had to adjust my driving due to the vehicle being in my lane." From the totality of the above specific, articulable facts, Scott could have reasonably inferred that Yeakley's failure to maintain a single lane was unsafe under the circumstances. That Scott and the other driver were able to avoid Yeakley's vehicle by applying their brakes and "being cautious" does not render Yeakley's movement safe. *See Cook v. State*, 63 S.W.3d 924, 928 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (concluding that officer is not required to wait to initiate traffic stop "until appellant placed himself or others in immediate peril as a result of his erratic driving"). We cannot conclude on this record that the district court abused its discretion in denying Yeakley's motion to suppress.

We overrule Yeakley's first issue.

**Failure to receive plea**

In his second issue, Yeakley asserts that the evidence supporting the enhancement allegations was not properly before the jury because the district court failed to receive Yeakley's plea to the allegations as required by statute. *See* Tex. Code Crim. Proc. Ann. art. 36.01(a) (West 2007). The violation of this statute, Yeakley contends, requires reversal and a new punishment hearing.

It is well settled that the reading of the enhancement allegations and the entry of the defendant's plea thereto are mandatory, and that no issue is joined between the State and the defendant with respect to the defendant's prior criminal record if this is not done. *Turner v. State*, 897 S.W.2d 786, 788 (Tex. Crim. App. 1995); *Mendez v. State*, 212 S.W.3d 382, 388 (Tex. App.—Austin 2006, pet. ref'd). "The purpose of this rule is 'to inform the accused of the

charges against him and to inform the jury of the precise terms of the particular charge against the accused.'" *Turner*, 897 S.W.2d at 788 (quoting *Warren v. State*, 693 S.W.2d 414, 415 (1985)). Thus, "[i]t is error to permit the jury to consider enhancement evidence admitted before the entry of the defendant's plea." *Mendez*, 212 S.W.3d at 388. When such an error is discovered, "the State can cure it by reading the enhancement paragraph, having the defendant plead to it, and reintroducing the evidence." *Turner*, 897 S.W.2d at 789 n.5.

In this case, the failure to receive Yeakley's plea to the enhancement allegations was never cured. The State, while acknowledging that there was not "complete compliance" with article 36.01, argues that Yeakley failed to preserve this issue for review by not objecting to the error at any point during the proceedings or raising it in his motion for new trial. Yeakley concedes that he did not bring the error to the attention of the district court but claims that the failure to comply with article 36.01 "is not subject to procedural default for failing to object at trial."

To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. Tex. R. App. P. 33.1(a). It is well established that almost every right, constitutional and statutory, may be waived by failing to object. *Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986); *Powell v. State*, 252 S.W.3d 742, 744 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

However, in *Turner v. State*, this Court concluded that a violation of article 36.01 may be raised for the first time on appeal. *See* 860 S.W.2d 147, 151 (Tex. App.—Austin 1993), *rev'd on other grounds*, 897 S.W.2d 786 (Tex. Crim. App. 1995). In that case, the defendant was convicted of the misdemeanor offense of driving with a suspended license. *Id*. at 149. Punishment was enhanced by a prior conviction for the same offense. *Id*. The State neglected to read the

9

enhancement portion of the information to the jury, and the defendant did not plead to the allegation. *Id*. at 150. On appeal, the State argued that because the defendant "did not object, move for a mistrial, move for a new trial, or otherwise raise in the county court the issue of her failure to plead to the enhancement allegation," she had waived the error. *Id*. This Court disagreed, concluding that "the reading of the charging instrument is a right that must be implemented in the absence of an express waiver." *Id*. at 151. This Court thus held that "the failure to comply with article 36.01(a)(1) at the punishment stage was not waived by appellant's silence in the trial court." *Id*. This Court then went on to find that the error was harmless and affirmed the conviction. *Id*.

On discretionary review, the court of criminal appeals, without disputing this Court's holding that a violation of article 36.01 could be raised for the first time on appeal, addressed the issue of whether such a violation was subject to a harmless-error analysis. *Turner*, 897 S.W.2d at 787-88. The court concluded that a harm analysis was inapplicable and that the failure of the State to "strictly comply" with article 36.01 constitutes reversible error, without regard to harm.[2] *Id*. at 789. Relying on the decision in *Turner*, Yeakley argues that no objection to the article 36.01 violation was required.

---

[2] We note that *Turner* predates *Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997), in which the court of criminal appeals held that "[e]xcept for certain federal constitutional errors labeled by the United States Supreme Court as 'structural,' no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis." *Id*. at 264. Although *Turner* has never been overruled, subsequent cases have held that a violation of article 36.01 is subject to a harmless error analysis. *See, e.g.*, *Mendez v. State*, 212 S.W.3d 382, 388 (Tex. App.—Austin 2006, pet. ref'd); *Hernandez v. State*, 190 S.W.3d 856, 868 (Tex. App.—Corpus Christi 2006, no pet.); *Linton v. State*, 15 S.W.3d 615, 620 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

Yeakley's reliance on *Turner* is misplaced. In light of cases decided subsequent to *Turner*, we can no longer say that an article 36.01 violation may be raised for the first time on appeal. *See, e.g., Cantu v. State*, 939 S.W.2d 627, 646 (Tex. Crim. App. 1997) (charge read and plea entered outside jury's presence in violation of article 36.01; court held any error harmless and observed that appellant waived any error by failing to object during trial); *Lee v. State*, 239 S.W.3d 873, 876-77 (Tex. App.—Waco 2007, pet. ref'd) (trial court failed to enter defendant's plea in violation of article 36.01; court held that defendant failed to preserve his complaint for appellate review by not objecting during trial and by not "filing a motion for new trial, bill of exception, or motion to arrest judgment" after trial); *Hardin v. State*, 951 S.W.2d 208, 211 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (State violated article 36.01 by reading enhancement paragraphs at commencement of guilt/innocence phase of trial rather than waiting until punishment; defendant failed to object; court held that "[a]bsent an objection, any violation of article 36.01 is waived").[3]

---

[3] *See also Burley v. State*, Nos. 14-09-00868-CR & 14-09-00869-CR, 2010 Tex. App. LEXIS 9933, at *5-6 (Tex. App.—Houston [14th Dist.] Dec. 16, 2010, no pet.) (mem. op., not designated for publication) ("Appellant argues for the first time on appeal that the failure to read the enhancement allegations to the jury and to take his plea on the allegations is reversible error. By failing to raise this issue in the trial court, appellant has not preserved error for our review."); *Meadows v. State*, No. 08-05-00394-CR, 2007 Tex. App. LEXIS 4490, at *18 (Tex. App.—El Paso June 7, 2007, no pet.) (not designated for publication) ("Any error in the State's failure to reintroduce the evidence so that it is properly before the jury can be waived by failing to object."); *Pope v. State*, No. 05-02-01745-CR, 2004 Tex. App. LEXIS 4783, at *16 (Tex. App.—Dallas May 27, 2004, pet. ref'd) (op. on reh'g, not designated for publication) ("Appellant did not preserve error at trial by objecting to the failure to enter a plea to the enhancement. Even if it was not until after the trial that appellant 'discovered' he had not entered a plea, appellant failed to raise this issue in his motion for new trial. Therefore, we conclude appellant has not preserved any issue for appeal on this point."); *Foster v. State*, No. 01-97-00871-CR, 1999 Tex. App. LEXIS 529, at *3-4 (Tex. App.—Houston [1st Dist.] Jan. 28, 1999, no pet.) (not designated for publication) ("Any error committed by the trial court in not requiring the State to re-introduce the evidence or by allowing the jury to consider the evidence presented before the reading of the enhancement allegation and the plea thereto, can be waived if the appellant does not object on that ground."); *Haley v. State*,

This Court has also issued an opinion subsequent to *Turner* that implies that the failure to enter the defendant's plea to the enhancement allegations may no longer be raised for the first time on appeal. In *Mendez v. State*, the State presented its enhancement evidence prior to the defendant entering his plea to the allegations. 212 S.W.3d at 387. After the State rested, the defendant brought the error to the trial court's attention and asked for a "directed verdict . . . that this enhancement provision is not applicable." *Id.* The trial court overruled the objection but required the State to read the enhancement allegations and the defendant to enter his plea of "not true" before the jury. *Id.* at 387-88. However, the trial court did not require the State to reoffer its evidence. *Id.* at 388.

On appeal, Mendez contended that the enhancement evidence was not properly before the jury because the State had failed to reoffer the evidence subsequent to Mendez's plea. *Id.* In response, the State argued that the defendant failed to preserve error by not objecting at the time the evidence was offered. *Id.* This Court disagreed, holding that "an objection at any point during the penalty stage is sufficient to preserve the error." *Id.* This Court reasoned that "[t]he failure to timely read the enhancement allegations and take Mendez's plea was brought to the attention of the trial court and the State at a time when it was possible to correct the error. At that point, the State was obligated to either abandon the enhancement allegations or to correct the error" by "reopen[ing] its case, read[ing] the enhancement allegations, tak[ing] the plea, and reintroduc[ing] or stipulat[ing] the previously introduced evidence." *Id.* (citing *Welch v. State*, 645 S.W.2d 284, 285 (Tex. Crim.

No. 06-98-00040-CR, 1999 Tex. App. LEXIS 104, at *7-8 (Tex. App.—Texarkana Jan. 12, 1999, pet. ref'd) (not designated for publication) (same).

12

App. 1983)). This Court concluded that "Mendez did all that was required to preserve this error for appeal and that no *further* objection was necessary." *Id*. (emphasis added).

The clear implication of *Mendez* and the other post-*Turner* cases cited above is that defendants are not excused from preserving error at the trial court when there is a violation of article 36.01. The violation must be "brought to the attention of the trial court and the State at a time when it [is] possible to correct the error." *Id*. In this case, however, at no point during the proceedings did Yeakley object to the district court's failure to receive his plea. Nor did he raise the issue in his motion for new trial. Thus, Yeakley has failed to preserve this issue for appellate review. *See* Tex. R. App. P. 33.1(a).

We overrule Yeakley's second issue.

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:   February 25, 2011

Do Not Publish