# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00624-CR
NO. 03-11-00625-CR

**Esteban Chavez, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF HAYS COUNTY, 428TH JUDICIAL DISTRICT
NOS. CR-11-0087, & CR-11-0115, HONORABLE WILLIAM HENRY, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Esteban Chavez of assault–family violence–repeat offender, a third-degree felony, and evading arrest with a motor vehicle, a state jail-felony. *See* Tex. Penal Code Ann. §§ 22.01 (West 2011), 38.04 (West Supp. 2012).[1] Punishment on the family-violence offense, enhanced by a prior felony conviction, was assessed at 15 years' imprisonment. *See id.* § 12.33 (second-degree felony punishment) (West 2011), .42(a) (enhancements for habitual offenders) (West Supp. 2012).[2] The jury also imposed a sentence of two

---

[1] Effective September 1, 2011, the evading-arrest-or-detention statute was amended in a number of significant ways, including making it a third-degree felony to use a vehicle to evade arrest. But because the language of the statute is not implicated by the issues on appeal, we cite the current version of the statute for convenience.

[2] Although the habitual-offender statute was amended effective September 1, 2011, we cite the current version of the statute for convenience because the language of the statute is not material to any issue on appeal.

years in prison and a $1,000 fine on the evading-arrest charge. On appeal, appellant contends that (1) he received ineffective assistance of counsel in his defense of both offenses and (2) his sentence on the family-violence offense must be reversed because the prosecutor failed to read the State's enhancement allegations to the jury and appellant did not enter his plea on those allegations. We will affirm both judgments of conviction.

## BACKGROUND

After engaging in a physical altercation with Cathy Grable, the mother of his two young daughters, appellant fled the scene of the assault using Grable's automobile. After leading police on a high-speed chase, an officer was able to stop the vehicle using a pursuit-immobilization technique called a "pit maneuver."[3] While the car was still moving, appellant bailed out and attempted to flee on foot but was apprehended after a police officer used a taser to subdue him.

Appellant was subsequently indicted for evading arrest with a motor vehicle and unauthorized use of a motor vehicle. *See id.* §§ 31.07 (West 2011), 38.04. He was also indicted for family-violence assault with an enhancement based on a prior conviction for the same offense, which elevated the charge from a misdemeanor to a third-degree felony.[4] *See id.* § 22.01(b)(2)(A). The

---

[3] Officer Dustin Slaughter of the City of San Marcos Police Department described the procedure as follows: "The method is to pretty much match their speed [and then] you match your front quarter panel in on their rear quarter panel on either side and drift into their vehicle, which forces it to lose traction on the rear end and spin around."

[4] "Defendant, on or about the 19th day of December, A.D. 2010, and before the presentment of this indictment in [Hays County, Texas] did then and there intentionally, knowingly and recklessly cause bodily injury to Cathy Grable by striking Cathy Grable on or about the head with his hand and striking Cathy Grable on or about the head with his knee, and the aforesaid Cathy Grable was then and there a member of the Defendant's family or household;

2

State proceeded on all three indictments, which were consolidated into a single jury trial because they arose out the same criminal episode. *See id.* § 3.02 (West 2011).

Prior to trial, the State filed a separate "Notice of Intent to Seek Enhancement of Punishment by Showing of Prior Felony Conviction," seeking to further enhance the punishment range for these offenses based on allegations that appellant had two prior felony convictions for burglary of a habitation and aggravated assault with an affirmative deadly-weapon finding.[5] *See id.* § 12.42 (authorizing enhanced penalties for repeat and habitual felony offenders). The State also filed a notice of intent to introduce evidence of 25 extraneous offenses, including the prior family-violence, burglary, and aggravated-assault convictions; rule violations and criminal conduct while appellant was imprisoned; gang membership; other acts of violence against Grable; and additional convictions for assault-causing-bodily-injury, family violence, and interference with an emergency telephone call.

Before any evidence was admitted at the guilt/innocence phase of the trial, the indictments were read to the jury, and appellant pleaded not guilty to all of the charges and not true

---

**Repeat Offender Enhancement**

And the Grand Jurors . . . do further present in and to said Court that prior to committing the aforesaid offense, the said Defendant, Esteban Chavez, was then and there previously convicted of an offense against a member of the Defendant's family or household, to wit:

on the 5th day of September, A.D. 2008, in the County Criminal Court of Dallas County, Texas, in Cause Number M-0872282 . . . ."

[5] "Before the commission of the primary offense, on or about the 12th day of December, 2008 in the Criminal District Court of Dallas County, Texas, the Defendant, Esteban Chavez, was convicted under Cause Number F-08-39281-I of the felony offense of Burglary of a Habitation and under Cause Number F-08-34851-I of the felony offense of Aggravated Assault with an affirmative finding of a Deadly Weapon."

3

to the family-violence repeat-offender enhancement. The enhancements sought on the basis that appellant had been previously convicted of two felonies were not read to the jury at that time. After hearing testimony from Grable and law-enforcement authorities and viewing video footage of the motor-vehicle pursuit, the jury convicted appellant of the family-violence offense as a repeat offender and the evading-arrest offense but acquitted appellant of the unauthorized-use-of-a-motor-vehicle charge.

During the punishment phase of the trial, appellant's judgments of conviction for felony burglary of a habitation and felony aggravated assault with a deadly weapon were admitted without objection along with evidence of numerous other extraneous offenses. However, the State's enhancement allegations were never read to the jury and no plea was ever entered to those allegations on appellant's behalf. Although the State concedes that this was error, appellant's trial counsel never objected to these omissions. Counsel likewise did not object when the State represented to the jury on several occasions in her opening statement, questioning, and closing argument that the State was seeking a maximum sentence of 20 years for the family-violence charge, which would be the case only if the jury found that appellant had been finally convicted of a prior felony offense. *Compare* Tex. Penal Code Ann. § 12.33 (West 2011) (punishment range for second-degree felony is 2 to 20 years) *with id.* § 12.34 (West 2011) (punishment range for third-degree felony is 2 to 10 years); *see also id.* § 12.42(a)(3) ("[I]f it is shown on the trial of a felony of the third degree that the defendant has previously been finally convicted of a felony . . . on conviction the defendant shall be punished for a felony of the second degree."). To the contrary, appellant's counsel acknowledged in his own opening statement and several times in his closing argument that the maximum sentence for the

family-violence offense was 20 years. The jury charge further instructed that the punishment range would be "not more than 20 years or less than 2 years" in prison if the jury found that appellant "has previously been finally convicted of one felony offense," and if not, the punishment range would be "not more than 10 years or less than 2 years" in prison. The charge did not otherwise include a recitation of the specific enhancement allegations or appellant's plea to those allegations, and appellant's counsel lodged no objection to the charge.

In accordance with the jury's verdict, the trial court sentenced appellant to concurrent terms of 15 years' imprisonment on the family-violence charge and 2 years' imprisonment on the evading-arrest charge and imposed a $1,000 fine on the evading-arrest charge. Appellant's motion for new trial was overruled by operation of law, and these consolidated appeals followed.

## DISCUSSION

In both appeals, appellant contends in his first appellate issue that he was deprived of the effective assistance of trial counsel because his appointed attorney failed to object to testimony in the guilt-innocence phase that appellant claimed to be a gang member. In the appeal of appellant's family-violence conviction, he contends in a second issue that he is entitled to a new sentencing hearing for that conviction because the jury was improperly instructed to consider an enhanced sentencing range without the trial court's having read the State's enhancement allegations and taken his plea on those allegations.

### Ineffective Assistance of Counsel

When the prosecutor questioned the arresting officer, the officer thrice volunteered that appellant claimed to be a gang member. Appellant's attorney did not object to this

5

testimony.  Without citing any authority, appellant contends on appeal that the testimony was inadmissible and should have been stricken and that his trial counsel's failure to object constitutes ineffective assistance.

Claims of ineffective assistance of counsel are reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  That standard requires appellant to prove (1) that his trial counsel's performance was deficient and (2) that such deficient performance was so serious that it deprived him of a fair trial.  *Id.* at 687.  In other words, appellant must prove, by a preponderance of the evidence, that counsel's representation fell below the objective standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different.  *Id.* at 690-94.

In reviewing an ineffective-assistance-of-counsel claim, our review of defense counsel's performance is highly deferential, beginning with the strong presumption that the attorney's actions were reasonably professional and were motivated by sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  Thus, when the record is silent as to counsel's strategy, we will not conclude that counsel's assistance was ineffective unless the challenged conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

Here, appellant's claim of ineffective assistance is not firmly founded in the record. All three references to appellant's claims of gang membership were volunteered by a single witness in response to questions that did not facially seek to elicit such testimony:

Q.      Now, can you describe for the jury the defendant's demeanor when he was in the back of your patrol car after he was arrested?

A.      Arrogant; cocky; loud; used profanity, cuss words; claimed to be an NWS gang member. That's about it.

. . . .

Q.      And he gave you good reasons to have your guard up at this point?

A.      Yes. [K]nowing that he assaulted the victim, evaded arrest with a motor vehicle, put our lives and the public at risk and danger and then just his arrogance and statements and claims of being a gang member that he made.

. . . .

Q.      Okay. Now, once he got to the jail, did that—did he calm down or was he also displaying any kind of violence or aggressive behavior at the jail?

A.      Once we got to the jail and then went inside the searching area, he became violent and resisted search with the jail staff and had to be forced into a restraining chair, which limits his movement just because he was acting aggressively and violent and cursing and still claiming to be a gang member and whatnot.

After the third reference to appellant's claims of gang affiliation, the trial judge asked counsel to approach the bench, and the following colloquy ensued:

The Court:          He testified about gang membership, he said it three times. He needs to be instructed.

[Prosecutor]:       I didn't know that that was going to be a problem.

The Court:          There's not an objection.

[Prosecutor]:       Right.

[Defense Counsel]:  Well, not yet, but I was going to get to—depending on what he said, I was going to get to it that if they're going to try to

7

|                       |                                                                                                                                                                                   |
| :-------------------- | :-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|                       | certify that he's a gang member, they need to have a member of a gang unit or someone that's qualified.                                                                            |
| [Prosecutor]:         | Well, not at this point. I was just going to leave it at that and not dwell on it.                                                                                                 |
| The Court:            | He should not come forward with anymore statements related to gang membership at this point, seems to me, but there isn't an objection.                                            |
| [Defense Counsel]:    | And I would ask—                                                                                                                                                                   |
| The Court:            | That puts you in a position where it may not have been appropriate or tactically appropriate.                                                                                      |
| [Defense Counsel]:    | On that same—I mean, I would ask at this point if there's going to be any statements that could open up to extraneous offenses, that he also be instructed not to go into those issues. |

Appellant contends that the failure to object—even after the trial court called his attention to the issue—shows that counsel was "'asleep' on the job" and that it is apparent on the face of the record that no trial strategy was involved. We disagree.

None of the questions that preceded the officer's testimony about appellant's gang-membership claims hinted that objectionable testimony was likely to follow. Once the officer volunteered the information and the cat was out of the bag, trial counsel was faced with a tactical decision of whether to further call the jury's attention to the testimony by objecting, asking that the jury be instructed to disregard the testimony, and moving for a mistrial. As the trial judge observed, defense counsel was put into a position in which "it may not have been appropriate or tactically appropriate" to make an objection. Under such circumstances, we cannot say that trial counsel's failure to object was not motivated by sound trial strategy or was so outrageous that no competent

attorney would have acted similarly. *See Goodspeed*, 187 S.W.3d at 392. Appellant's first appellate issue is overruled.

### *Sentencing Error*

In his second issue, appellant asserts that the jury was improperly charged as to the maximum sentencing range for the family-violence offense because the State failed to read the enhancement allegations to the jury and the trial court failed to receive appellant's plea to those allegations as required by statute. *See* Tex. Code Crim. Proc. Ann. art. 36.01(a) (West 2007) (requiring that enhancement allegations in indictment be read to jury and defendant's plea taken).

It is well settled that it is mandatory that sentencing-enhancement allegations be read to the jury and the defendant's plea to those allegations be taken. *See Turner v. State*, 897 S.W.2d 786, 788 (Tex. Crim. App. 1995); *Mendez v. State*, 212 S.W.3d 382, 388 (Tex. App.—Austin 2006, pet. ref'd); *see also Marshall v. State*, 185 S.W.3d 899, 903 (Tex. Crim. App. 2006) (applying same requirement to enhancement allegations set forth in document separate from indictment). "The purpose of this rule is 'to inform the accused of the charges against him and to inform the jury of the precise terms of the particular charge against the accused.'" *Turner*, 897 S.W.2d at 788 (quoting *Warren v. State*, 693 S.W.2d 414, 415 (Tex. Crim. App. 1985)). Thus, "[i]t is error to permit the jury to consider enhancement evidence admitted before the entry of the defendant's plea." *Mendez*, 212 S.W.3d at 388.

The State concedes that the failure to read the enhancement allegations and receive appellant's plea was error that was not cured but points out that the error was never brought to the trial court's attention, by objection or otherwise. *See* Tex. R. App. P. 33.1(a) (to preserve complaint

9

for appellate review, party must have presented to trial court timely request, objection, or motion stating specific grounds).  Although appellant admits that the error was not preserved, he contends that he was not required to object until it became clear in the jury charge that the State was proceeding with the enhancement allegations because the enhancement allegations were made in a document other than an indictment.  *See Marshall*, 185 S.W.3d at 903 ("[T]he notice of intent to seek a greater penalty was in a separate document of a kind not usually read to a jury.  In such circumstances, the failure to read enhancement allegations does not put a defendant on notice that the proceedings have gone amiss and thus no objection is required.  Likewise, a failure to take a plea from a defendant at that time raises no alarms as there are no allegations to which to plead.").

At one time the rule was that "no issue [is] joined" between the State and the defendant with respect to the defendant's prior criminal record if the enhancement allegations are not read to the jury and the defendant's plea is not taken, *see e.g.*, *Welch v. State*, 645 S.W.2d 284, 285 (Tex. Crim. App. 1983), and that when such error occurs, no harm analysis is required, *Turner*, 897 S.W.2d at 788.  However, in *Marshall v. State* the court of criminal appeals clarified that a specific trial objection is necessary to preserve this type of error for appellate review.  *See Marshall*, 185 S.W.3d at 902-03 (citing Tex. R. App. P. 33.1(a)); *see also Yeakley v. State*, No. 03-09-00584-CR, 2011 WL 677391, at *6 (Tex. App.—Austin Feb. 25, 2011, pet. dism'd) (mem. op.) (not designated for publication) (defendant "not excused from preserving error" when trial court fails to take plea to enhancement allegations).  Indeed, "[t]he violation must be brought to the attention of the trial court and the State at a time when it [is] possible to correct the error." *Yeakley*, 2011 WL 677391, at *7 (alteration in original) (internal quotations omitted).  When such

10

an error is discovered, "the State can cure it by reading the enhancement paragraph, having the defendant plead to it, and reintroducing the evidence." *Turner*, 897 S.W.2d at 789 n.5. The parties here agree that, like the defendant in *Marshall*, appellant was not required to object to the error until the jury charge was presented. Because appellant failed to object at that point, however, *Marshall* requires evaluation of the error under the egregious-harm standard. *See Marshall*, 185 S.W.3d at 903 (noting that error became abundantly clear when jury charge seeking enhanced sentencing was read and failure to object at that point requires reversal only when egregious harm results).

Egregious harm is a difficult standard that must be determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). Egregious harm due to charge error exists if the error affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). Essentially, the error must have been so harmful as to effectively deny the accused a fair and impartial trial. *See Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). Harm arising from jury-charge error must be actual, not just theoretical. *Dickety v. State*, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999). Neither party has a burden to show harm; rather, we review the record before us and make an independent assessment as to whether the jury's verdict was affected by the charge error. *See Warner*, 245 S.W.3d at 464; *Swearingen v. State*, 270 S.W.3d 804, 813 (Tex. App.—Austin 2008, pet. ref'd). In determining whether the appellant suffered egregious harm, we consider (1) the entire jury charge, (2) the state of the evidence, including the contested issues and weight of the probative evidence, (3) arguments made by counsel, and (4) any other relevant information revealed by the record as a whole. *Allen*, 253 S.W.3d at 264.

11

In light of the entire charge, the evidence, the argument of counsel, and the record in general, we conclude that the charge error did not cause egregious harm. Appellant's defensive strategy on punishment was to seek a sentence at the lower end of the sentencing range, appealing to the jury's sense of what was "reasonable" in light of the circumstances of the crime, appellant's youth, and appellant's background. Appellant did not contest, either with evidence or argument, the allegation that he had committed the two enhancement offenses, and he does not contend that there is insufficient evidence of those offenses. Because the punishment charge errors could have affected only the jury's findings on whether appellant had committed the prior offenses, the errors did not "vitally affect a defensive theory" or deprive appellant of a valuable right because appellant effectively conceded that the State's evidence was sufficient to support the enhanced punishment range by not challenging it or arguing that the State failed to meet its burden of proof on the enhancements, which would have opened the door to a lower maximum punishment under the alternative jury issue.

It is also apparent from the record and the arguments of counsel that the defense was not surprised that the State was pursuing the sentencing enhancements because the prosecutor repeatedly stated at numerous times throughout all stages of the proceedings that the State was seeking a maximum 20-year sentence. Defense counsel likewise referred to 20 years as the maximum sentence on several occasions when addressing the jury and never referred to any other range as representing the sentencing maximum for this case. Furthermore, the sentencing range of 2 to 20 years was discussed at the charge conference, and an "alternate" range of 2 to 10 years was submitted to the jury, allowing the jury to consider a lower sentencing range if the State failed to

meet its burden of proof on the enhancements. Thus, appellant was on notice that the State had not abandoned the enhancements. Finally, the core issue to be decided by the jury was an appropriate punishment, and we cannot discern from the record that the failure to read the enhancement allegations and take appellant's plea actually, as opposed to theoretically, affected the jury's decision in that regard.

Based on the record before us, we cannot conclude that appellant suffered egregious harm from the jury-charge error. Accordingly, we overrule appellant's second appellate issue.

## CONCLUSION

For the reasons stated, we affirm appellant's convictions and punishments.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed: February 6, 2013

Do Not Publish

13