**Opinion filed January 16, 2020**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00335-CR
_____

## ROY DANIEL GARZA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause No. B-16-0305-CR**

## M E M O R A N D U M   O P I N I O N

The jury convicted Roy Daniel Garza of the attempted capital murder of Sergeant Pedro Gonzalez and Corporal Cory Wester of the Odessa Police Department (OPD) and assessed his punishment at confinement for life for each offense—with the sentences to run concurrently. We affirm.

Appellant presents eleven issues on appeal. In the first issue, he contends that the trial court erred when it denied his motion for new trial. In his second and third issues, Appellant complains that the trial court abused its discretion when it denied

his motion for new trial. In Appellant's fourth, fifth, and sixth issues, he asserts that the trial court erred in when it admitted certain testimony into evidence. In his seventh issue, Appellant contends that the trial court erred when it permitted the untimely reading of enhancement paragraphs and Appellant's untimely pleas to those paragraphs. In Appellant's eighth issue, he complains that the trial court erred when it overruled his objection to the charge regarding the range of punishment. In his ninth issue, Appellant asserts that the evidence was insufficient to support the jury's implied rejection of his self-defense claim. In Appellant's tenth issue, he contends that the trial court erred when it denied his motion for directed verdict. In his eleventh issue, Appellant complains that the evidence is insufficient to support his convictions for attempted capital murder.

On the morning of December 23, 2015, several OPD officers and two private investigators went to Appellant's apartment to execute three confirmed warrants for his arrest. Appellant was a wanted fugitive who had failed to appear in court on a charge of aggravated robbery.

The apartment manager accompanied Corporal Cory Wester, Corporal Jaime Aguirre, and the private investigators to Appellant's apartment. The manager knocked on the front door of Appellant's apartment and announced herself. Sergeant James Patrick Chadwick and Sergeant Pedro Gonzalez waited at the back of the apartment and watched for Appellant. Corporal Wester heard a male and a female talking inside, and when Appellant's wife, Megan Garza, answered the door alone, Corporal Wester repeatedly asked her to provide Appellant's location. Megan told Corporal Wester that she had not seen Appellant in months and did not know his location.

While positioned at the rear of the apartment, Sergeant Chadwick heard the sliding glass door to Appellant's apartment open. Appellant left his apartment and "proceed[ed] to the patio next door." Sergeant Chadwick informed other officers by

2

radio that he had seen Appellant proceed to the neighbor's patio. Sergeant Chadwick and Sergeant Gonzales "enter[ed] that back patio in an attempt to apprehend [Appellant], but he had already moved inside the [neighbor's] apartment."

Corporal Aguirre used the manager's key to open the front door of the neighbor's apartment. Corporal Wester then announced: "Odessa Police Department, make yourself known." Corporal Wester entered the apartment, and then Corporal Aguirre entered. After Corporal Wester cleared the living room, kitchen, and a bathroom, Corporal Aguirre pointed out that Corporal Wester had missed a door. Corporal Wester heard a noise, and when he glanced back, he saw Appellant exit a closet in a crouched position as he continuously fired his gun at Corporal Wester.

Corporal Wester attempted to retreat into the kitchen, but as he did, a bullet hit his left pelvis. The gunshot wound rendered his left leg useless, and he fell on his back. As Corporal Wester raised himself up on one elbow and extended his pistol, Appellant fired his gun again and injured Corporal Wester's thumb, which caused Corporal Wester to drop his weapon. Appellant moved toward the bedroom doorway as he continued to fire his gun at Corporal Wester. A bullet penetrated Corporal Wester's vest and struck his chest. The shooting did not end there. While on his back, Corporal Wester scooted back in an attempt to gain cover. However, Appellant continued to fire his gun at Corporal Wester, and another bullet struck his right calf. According to Corporal Wester, after Appellant shot him five times, Appellant approached the end of the hallway and fired toward the front door. As Corporal Wester prepared to fire his Taser, Appellant stopped firing his pistol and ran toward the bedroom. Corporal Wester's Taser probe struck the bedroom door as it closed.

During this time, Corporal Aguirre had taken cover and returned gunfire. While Corporal Aguirre fired rounds toward the bedroom, Corporal Wester crawled

on his stomach to the doorway, and one of the private investigators dragged Corporal Wester away. Corporal Aguirre backed out of the apartment.

Sergeant Gonzalez retrieved his rifle and exchanged gunfire with Appellant. Appellant shot Sergeant Gonzalez in the torso, which was covered by his protective vest, and also in the left arm.

Corporal George Amezola fired a shot and struck Appellant. Appellant subsequently fired and struck a pool house roof where two members of a SWAT team, "snipers," were positioned. Appellant also shot and disabled a robot that had been deployed into the apartment for surveillance and intelligence purposes.

Corporal Travis W. Fraser, a crisis negotiator, began negotiations with Appellant. A recording of the negotiations was admitted into evidence. During the negotiations, Appellant acknowledged that he had shot two officers and noted that, although he could have shot one of the snipers, he shot in the direction of the sniper for the mere purpose of scaring him. When Corporal Fraser asked: "You shot at the officers to wound them, not to kill them, right?" Appellant answered: "Right." However, Appellant later explained that officers "came in [with] weapons drawn and when I seen them, I started firing." Appellant also said that he "really wasn't trying to hurt them." Ultimately, Appellant discarded his weapons and surrendered.

Texas Ranger Randy Lewis responded to the scene, accompanied Appellant in the ambulance, and subsequently interviewed Appellant at the police department. A recording of that interview was admitted into evidence. During the interview, Appellant admitted that he knew that there was a warrant for his arrest, but Appellant claimed that he did not initially know that police were present at the apartment because he had been asleep, was not wearing his contacts, and had very poor eyesight. Appellant took his gun, grabbed a box of ammunition, and entered the neighbor's apartment where he hid in a closet. Appellant acknowledged that, when officers entered his neighbor's apartment, he heard them announce: "This is Odessa

4

PD. Come out with your hands up. Make yourself known." He claimed that, when he peeked out of the closet door with his gun in his hand, officers deployed a Taser and fired a gunshot but did not strike him. Appellant stated that "there wasn't too much thought process" when he fired his weapon; he said that he instinctively returned fire, in self-defense, at the two officers, whom he claimed had fired first.

Appellant claimed that, when he shot one of the officers—whom he described as being crouched, holding an M16, and moving his head back and forth—he was aiming at the fence and was not necessarily trying to hit the officer. Appellant acknowledged, however, that he knew that the man was a police officer. Appellant admitted that he had reloaded his .40 caliber pistol twice during the course of events. When asked whether he had considered that one of his rounds could actually strike and kill an officer, Appellant answered: "I mean, speaking in possibilities, we all know what can happen."

During trial, Appellant testified that warrants for his arrest had been issued based on his violation of the terms of his parole for a drug-related conviction and his violation of the terms of his bond when he failed to appear in court on a charge of aggravated robbery. He claimed that Megan's grandmother, who was the guarantor on his bail bond, had sent "bounty hunters" to find him. He also claimed that, although he had not planned to escape if police had approached him, he had prepared to abscond from the bounty hunters by putting a trap door in the apartment fence and stashing his loaded pistol, ammunition, and a bag of clothes in his neighbor's apartment closet.

Appellant again claimed that, when someone knocked on his apartment door, he had been sleeping and was unable to determine who was at the door because he was not wearing his contacts. Because he thought it might be his wife's grandmother or the bounty hunters, Appellant used the trap door in the fence, entered his neighbor's apartment, and hid in the closet with the door closed.

5

Appellant testified that he heard an unknown person enter his neighbor's apartment and announce, "Odessa Police Department." Appellant explained that, when he "cracked" the closet door and looked toward the officers, one of them fired a Taser in Appellant's direction and another officer fired his weapon. He testified that he had misspoken when he told the negotiator that officers entered with their "guns drawn" and that he had meant to say, instead, that they had entered with "guns blazing." Appellant testified that, when the officer fired his gun in Appellant's direction, Appellant fired his pistol four or five times in the general direction of the initial gunshot, heard the officer scream, and noticed that the officers were retreating. Appellant stated that he did not look as he fired his weapon from the closet and denied that he ever entered the living room while firing his pistol. Appellant testified that, as he fired his pistol, his intent was to defend himself and to scare the officers away.

Appellant testified that, after the officers left the apartment, he barricaded himself in the bedroom and put in his contact lenses. Appellant subsequently fired his weapon again, but he testified that his intent at that time was to scare the officers and keep them away. He claimed that he did not know at that time that he had shot another officer.

We will first address Appellant's ninth, tenth, and eleventh issues concerning the sufficiency of the evidence to support his convictions. In his ninth issue, Appellant complains that the evidence was insufficient to support the jury's implied rejection of his self-defense claim after the jury found him guilty of attempted capital murder. In his tenth issue, Appellant argues that the trial court erred when it denied his motion for a directed verdict at the conclusion of the guilt/innocence phase of trial. In his eleventh issue, Appellant contends that the evidence was not sufficient to warrant a conviction for attempted capital murder.

6

We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 895, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011). A motion for directed verdict is reviewed under the same standard as the legal sufficiency of the evidence. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). Thus, when performing an evidentiary sufficiency review, we may not reevaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi*, 330 S.W.3d at 638. We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

The Texas Penal Code provides that a person commits the offense of murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2019). Murder becomes capital murder under certain circumstances, including when the person murders a peace officer who is acting in the lawful discharge of his official duties and whom the person knows to be a peace

officer. *Id.* § 19.03(a)(1). An attempt to commit an offense occurs when, with the specific intent to commit the offense, a person does an act that amounts "to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id.* § 15.01(a).

To permit the jury to find Appellant guilty of the attempted capital murders of Corporal Wester and Sergeant Gonzalez, the State was required to prove beyond a reasonable doubt that, with the specific intent to cause the deaths of Corporal Wester and Sergeant Gonzalez, and while knowing that they were peace officers acting in the lawful discharge of an official duty, Appellant intelligently and knowingly discharged a firearm at Corporal Wester and at Sergeant Gonzalez, which were acts amounting to more than mere preparation that tended but failed to effect the commission of the offenses of capital murder. *See id.* §§ 15.01(a), 19.02(b)(1), 19.03(a)(1); *Flanagan v. State*, 675 S.W.2d 734, 741 (Tex. Crim. App. 1984) (op. on reh'g) ("[A] specific intent to kill is a necessary element of attempted murder.").

Appellant does not challenge the sufficiency of the evidence to establish that Corporal Wester and Sergeant Gonzalez were peace officers or that they were acting in the lawful discharge of an official duty. Instead, Appellant argues that the evidence was insufficient to show that he intended to kill Corporal Wester or Sergeant Gonzalez. Although Appellant claimed that he was not trying to hurt the officers, the jury was free to reject this claim. "[T]he specific intent to kill may be inferred from the use of a deadly weapon." *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012); *see also Godsey v. State*, 719 S.W.2d 578, 580–81 (Tex. Crim. App. 1986) (citing *Flanagan*, 675 S.W.2d at 744).

The record reflects that, if Corporal Wester had not been wearing his protective vest, the gunshot wound to his chest would probably have been fatal. Dr. Michael Jerard Cornielle testified that he "expect[ed]" that a person firing a gunshot to that area of the body was "trying to hurt someone very badly, if not kill

8

them." Dr. Cornielle noted that Sergeant Gonzalez also had an abrasion on his chest with the same characteristics as Corporal Wester's chest wound.

The evidence supports a finding that Appellant intended to kill Corporal Wester and Sergeant Gonzalez. *See Cavazos*, 382 S.W.3d at 384; *Godsey*, 719 S.W.2d at 580–81. The jury was free to disbelieve Appellant's testimony that he lacked the requisite intent to cause the deaths of the officers when he shot them. When we consider the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Appellant committed the offenses of attempted capital murder of Corporal Wester and Sergeant Gonzalez. Accordingly, we hold that the evidence was sufficient to support Appellant's convictions and the trial court's denial of Appellant's motion for directed verdict.

In his ninth issue, Appellant claims that the evidence was legally insufficient to support the jury's implicit rejection of his self-defense claim. Self-defense is a fact issue that is determined by the jury, and the jury's verdict of guilt is an implicit finding that it rejected the defendant's self-defense theory. *See Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). The defendant has the burden of producing evidence to support a self-defense claim. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *see also Saxton*, 804 S.W.2d at 913–14 (contrasting self-defense from affirmative defenses and explaining how burdens shift for self-defense). If the defendant produces some evidence, the State has "the burden of persuasion to disprove the raised defense." *Zuliani*, 97 S.W.3d at 594. The State's burden does not require the production of any additional evidence; instead, "it requires only that the State prove its case beyond a reasonable doubt." *Id*.; *see Saxton*, 804 S.W.2d at 913. We review a sufficiency challenge to the jury's rejection of self-defense under the legal sufficiency standard. *Smith v. State*, 355 S.W.3d 138, 145 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). We have already discussed

the well-known standard of review under which we review a challenge to the sufficiency of the evidence. We see no need to repeat that standard here.

We have examined all the evidence in this case in the light most favorable to the verdict and have previously determined that a rational trier of fact could have found the essential elements of the charged offenses beyond a reasonable doubt. We therefore proceed to determine whether a rational trier of fact could have found against Appellant on the self-defense issue beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914.

Section 9.32 of the Penal Code provides in relevant part that a person is justified in using deadly force against another (1) if he would be justified in using force under Section 9.31 and (2) when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. PENAL §§ 9.31, 9.32(a)(1), (a)(2)(A). Section 9.31 provides that the use of force against another in self-defense is not justified to resist an arrest or search that the actor knows is being made by a peace officer—even though the arrest or search is unlawful—unless, before the actor offers any resistance, the peace officer uses or attempts to use greater force than necessary to make the arrest or search and the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's use or attempted use of greater force than necessary. *Id.* § 9.31(b)(2), (c).

From the evidence presented at trial, a rational jury could have found that Appellant's use of deadly force was not justified. The jury was entitled to disbelieve Appellant's version of the events, especially in light of his various inconsistent statements and the conflicting testimony. The jury could have determined from the evidence that Appellant's belief that deadly force was immediately necessary to protect himself was not a reasonable belief. Furthermore, the jury could have reasonably determined that Corporal Wester and Corporal Aguirre had not used or

10

attempted to use unlawful deadly force against Appellant or had not used or attempted to use greater force than was necessary when they executed the arrest warrant. In the absence of evidence in the record indicating that the jury was irrational in rejecting Appellant's claims of self-defense, we decline to substitute our own view of the witnesses' credibility for that of the jury. *Saxton*, 804 S.W.2d at 913.

Because we have concluded that a rational trier of fact could have found the essential elements of the offenses beyond a reasonable doubt, and because the record contained sufficient evidence from which a rational jury could have rejected Appellant's claim of self-defense beyond a reasonable doubt, we overrule Appellant's ninth, tenth, and eleventh issues on appeal.

In his fourth, fifth, and sixth issues, Appellant complains of evidentiary rulings. We review a trial court's evidentiary rulings under an abuse of discretion standard. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Id.*; *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). We will uphold the trial court's ruling on the admission or exclusion of evidence if the ruling was proper under any legal theory or basis applicable to the case. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). We address Appellant's three evidentiary issues in turn.

In Appellant's fourth issue, he contends that the trial court erred when it allowed multiple witnesses to testify regarding the nature of the warrant for Appellant's arrest. At a pretrial conference, defense counsel advised the trial court that references were made to Appellant's warrants, criminal history, and pending cases during both the recorded negotiations and the custodial interview and asserted that the prejudicial danger of that information outweighed its evidentiary value. Defense counsel also noted: "If you limit it [to the fact that officers] were just there

11

to serve a warrant . . . I think that might clean it up to where both sides can live with it."

At the pretrial hearing, the prosecutor and defense counsel advised the trial court that they had agreed that evidence regarding Appellant's parole warrant would be admitted at trial. The State agreed that information regarding "certain aspects of the priors" and the "facts relating to what the [aggravated robbery] warrant [was] for" would not be disclosed at trial. However, the State noted that it had the burden to prove that Appellant possessed the requisite intent to kill the police officers. The State argued that the fact that the arrest warrant was being executed based on a charge of aggravated robbery was properly admissible because that fact was relevant to Appellant's state of mind, motive, intent and plan—to "why [Appellant] would go to those extremes"—and to the officers' actions when they attempted to arrest Appellant pursuant to the warrant. Defense counsel objected to the admissibility of the "aggravated robbery portion" of the warrant under Rule 404(b) because the conduct was unproven and under Rule 403 because such disclosure would be extremely prejudicial to Appellant, who had not been convicted of the charged aggravated robbery. *See* TEX. R. EVID. 403, 404(b). Defense counsel argued that the State had "plenty of motive evidence" and facts to show Appellant's intent. The trial court commented, "If [the defendant] brings it up during the course of the negotiations, then I am going to allow it in," and expressly acknowledged its belief that the probative nature of the evidence would outweigh its prejudicial effect.

During its opening statement in the guilt/innocence phase of trial, the State told the jury that Appellant had a parole warrant as well as a warrant for failure to appear in an aggravated robbery case. Defense counsel requested a bench conference, stated that he had understood that the nature of the arrest warrant would not be introduced, and noted that references to the aggravated robbery had been redacted from the recorded evidence. However, the trial court agreed with the

12

State's observation that the State had previously indicated that it would be introducing into evidence the warrant in which the aggravated robbery charge was mentioned. The trial court asked defense counsel, "Is that an objection?" Defense counsel answered, "Yes," and the trial court overruled the objection. The trial court subsequently granted Appellant's request for a running objection regarding "the issue concerning aggravated robbery on the warrant and any reference to it" on grounds that the aggravated-robbery nature of the warrant was an unproven extraneous offense and that the prejudicial effect of the evidence outweighed its probative value. *See* TEX. R. EVID. 103(b).

Witnesses testified that the arrest warrant involved a charge of aggravated robbery with a deadly weapon, and the warrant was admitted into evidence. The jury heard Appellant's recorded acknowledgment that a warrant had been issued for his arrest based on a charge of aggravated robbery and also heard Appellant testify during direct examination that he knew the warrant was being executed because he had failed to appear in court on the aggravated robbery charge.

Under Rule 404(b), evidence of an extraneous offense may be admissible as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. TEX. R. EVID. 404(b). In other words, Rule 404(b) requires evidence of an extraneous offense to be "relevant to a material, non-propensity issue." *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

We agree with the trial court's decision to admit evidence regarding the "aggravated robbery" nature of Appellant's warrant under Rule 404(b). This evidence was relevant to a material, non-propensity issue because it tended to show Appellant's motive, intent, plan, knowledge, and absence of mistake or accident regarding his conduct to evade arrest. *See Sypniewski v. State*, 799 S.W.2d 432, 434 (Tex. App.—Texarkana 1990, pet. ref'd) (reasoning that a warrant for an extraneous offense inferentially shows motive to evade arrest). Because the trial court fairly

13

reasoned that the arrest warrant was relevant to Appellant's motive rather than Appellant's character, there was no error under Rule 404(b).

Under Rule 403, a trial court's decision to admit evidence is reasonable if "the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury." *De La Paz*, 279 S.W.3d at 344; *see* TEX. R. EVID. 403. Rule 403 requires the balancing of these factors: "(1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence." *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012). A trial court is presumed to have engaged in the required balancing test when Rule 403 is invoked. *Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997). There is a presumption in favor of admitting relevant evidence; the corollary presumption is that evidence admissible under Rule 404(b) "is more probative than prejudicial." *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).

With these presumptions in mind, we weigh the probative value and the proponent's need for the evidence against the likelihood that the evidence will create unfair prejudice or mislead the jury. *Hernandez*, 390 S.W.3d at 324. Given the presumptions and the abuse-of-discretion standard of review, we cannot conclude that the trial court's ruling was unreasonable. The existence and nature of the arrest warrant was probative of Appellant's motive and intent to evade arrest and to kill police officers, and it compellingly served to make those facts of consequence— motive and intent—more or less probable. *See Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex. Crim. App. 1991). The State's evidence of Appellant's motive and intent was restricted to the testimony of others about Appellant's conduct and demeanor when the police officers attempted to serve the warrant and about the police officers' injuries. The limited sources of evidence related to

Appellant's motive and intent may have increased the need for evidence of the arrest warrant and its nature. The probative value of the arrest warrant evidence was high, and the State's need for it was arguably high.

Furthermore, there was only a moderate likelihood that evidence of the arrest warrant would mislead the jury. At trial, the underlying nature of the warrant—that is, the aggravated robbery charge—was referenced only in conjunction with the existence of the warrant and the fact that officers were attempting to arrest Appellant in conformity with the warrant. No facts regarding the alleged aggravated robbery were presented to the jury during the guilt/innocence phase of trial. During its closing argument, the State only referred to Appellant's knowledge that the warrant existed and made no reference to the fact that the warrant was related to an aggravated robbery charge. Because the testimony regarding the aggravated robbery was brief and the evidence at trial focused on Appellant's shooting of the officers in this case, the chance that the jury was distracted due to the extraneous aggravated robbery charge was low.

The State's need to present the relevant, underlying nature of the warrant was relatively high, and the potential of this evidence to mislead the jury was low. Consequently, the trial court did not abuse its discretion when it determined that the danger of unfair prejudice did not substantially outweigh the probative value of the warrant, and its decision to admit evidence that the warrant was based on an aggravated robbery charge was reasonable under Rule 403. We overrule Appellant's fourth issue on appeal.

In his fifth issue on appeal, Appellant asserts that the trial court erred when it overruled his relevancy objection to private investigator Raul Escalante's testimony that aggravated robbery occurs when a deadly weapon is used during the commission of a robbery. *See* PENAL § 29.03(a)(1)–(3). The State contends that it had asked Escalante to explain the elements of aggravated robbery to impart to the jury that the

15

seriousness of the extraneous felony charge provided the basis for Appellant's motive and intent in evading arrest—essentially, to show that Appellant knew that he faced a long sentence and had planned a "final stand."

To be admissible, evidence must be relevant. TEX. R. EVID. 402. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Id.* We conclude that this evidence—that Appellant faced a charge on the serious offense of aggravated robbery with a deadly weapon—was relevant to show Appellant's intent when he evaded and shot police officers during the execution of the arrest warrant based on that charge.

Even if we were to decide that the admission of Escalante's testimony regarding the elements of aggravated robbery constituted error, the admission of this evidence did not harm Appellant. Appellant subsequently testified on direct examination that he had known of the existence of a warrant for aggravated robbery and admitted that he had been "on the run" for failing to appear in court on a charge of aggravated robbery.

The improper admission of evidence cannot constitute reversible error if the same or similar evidence is admitted without objection at another point in the trial. *See Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010) (citing *Leday v. State*, 983 S.W.2d 713, 716–18 (Tex. Crim. App. 1998)); *Lane v* State, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004); *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999). Accordingly, we overrule Appellant's fifth issue on appeal.

In his sixth issue on appeal, Appellant complains that the trial court erred when it overruled his objection to Ranger Lewis's testimony regarding the bullet points of entry and exit on Corporal Wester's protective vest. He argues that the trial court abused its discretion when it allowed Ranger Lewis to testify as an expert on the bullet's trajectory and the angle at which the bullet entered and exited

Corporal Wester's protective vest. Appellant bases his argument on the failure of the trial court to determine that Ranger Lewis was qualified to testify regarding ballistics, the State's failure to identify Ranger Lewis as an expert prior to trial, and Ranger Lewis's failure to testify regarding any training he had in ballistics that would qualify him to provide an expert opinion regarding the bullet's trajectory or the angle at which Corporal Wester had been shot.

At trial, the State handed Corporal Wester's protective vest to Ranger Lewis and asked him to use a flight path rod to "demonstrate the basic trajectory of the bullet for the jury." Defense counsel sought a bench conference and noted: "This appears to be in the neighborhood of expert witness and if he's going to testify as to trajectory or dynamics of a bullet, I would like to hear his qualifications before he starts making those statements." The trial court noted that the State had asked Ranger Lewis whether he could show "where the bullet went through." The trial court overruled the objection.

After Ranger Lewis noted that he was uncertain whether he could get the rod through the vest, the State asked him: "Can you say, generally speaking, whether the entry was higher or lower than what the exit wound appears to be?" Ranger Lewis testified that the entry hole was slightly lower than the exit hole. The State asked: "Could I ask you if that would be consistent with the wearer of the vest [lying] on his back while being shot?" The trial court overruled defense counsel's renewed objection "to [Ranger Lewis's] expertise." Ranger Lewis answered: "I would say it's consistent with someone [lying] down."

Appellant contends on appeal that, absent a showing of any ballistics training, Ranger Lewis was not qualified to determine whether the trajectory of the bullet or the hole in Corporal Wester's vest was consistent with a man being shot while lying on his back. Consequently, he argues, the trial court erred when it overruled defense counsel's Rule 702 objection and allowed Ranger Lewis to opine regarding bullet

17

trajectory, gun angle, and Corporal Wester's position when the bullet entered his vest. *See* TEX. R. EVID. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.").

The State asserts that it did not offer Ranger Lewis's testimony as that of an expert but that it offered the testimony only as Rule 701 lay testimony rationally based on his common-sense perception. *See* TEX. R. EVID. 701. Ranger Lewis did not perform any experiments or tests; he merely attempted to push a rod through the hole of the vest, commented that the entry hole was lower on the vest than the exit hole, and rendered a common-sense conclusion that the entry and exit holes were consistent with someone who was lying down when shot. We agree with the State that the complained-of testimony was lay testimony, not expert testimony. We are unable to conclude that the trial court abused its wide discretion when it permitted Ranger Lewis to testify regarding the entry and exit holes on the vest and the significance of the entry hole being lower than the exit hole. We note that Corporal Wester testified that he was lying on his back when Appellant shot him. We overrule Appellant's sixth issue on appeal.

In his seventh issue on appeal, Appellant complains that the trial court erred when it overruled his objection to the untimely reading of enhancement paragraphs and the untimeliness of Appellant's plea to the enhancement paragraphs. In his eighth issue on appeal, Appellant contends that, based on such untimeliness, the trial court erred when it overruled his objection to the range of punishment included in the jury charge.

The reading of the enhancement paragraphs at the inception of the punishment phase of trial and a defendant's plea to them are mandatory. CRIM. PROC. art. 36.01(a)(1) (West 2017); *Turner v. State*, 897 S.W.2d 786, 788 (Tex.

Crim. App. 1995). The purpose of this rule is to inform the defendant of the charges against him and to inform the jury of the precise terms of the particular charges against the defendant. *Turner*, 897 S.W.2d at 788 (citing *Warren v. State*, 693 S.W.2d 414, 415 (Tex. Crim. App. 1985). Error that results from a failure to read the enhancement allegations and from a failure to obtain the defendant's plea to the allegations can be cured by the State's reopening of its case-in-chief and its reading of the enhancement allegations, by the defendant's entry of a plea to the allegations, and by the State's reintroduction of the previously introduced evidence unless the parties have stipulated to that evidence. *Warren*, 693 S.W.2d at 416 (citing *Welch v. State*, 645 S.W.2d 284, 285 (Tex. Crim. App. 1983) (explaining that the proper procedure to place the evidence before the jury in these circumstances is to permit the State to reintroduce the evidence unless the defendant stipulates to the same)); *Mendez v. State*, 212 S.W.3d 382, 388 (Tex. App.—Austin 2006, pet. ref'd). "When this is done, the issue is joined and a trial on the issue may be held." *Warren*, 693 S.W.2d at 416.

In this case, the enhancement allegations were not set out in the indictments but, rather, were set out in the State's notice of intent to seek enhancement of sentence. The prosecutor did not read the enhancement allegations set forth in the State's enhancement notice at the inception of the punishment phase of trial; consequently, Appellant did not enter a plea at that time. Instead, at the close of the State's punishment evidence—but before the State rested—the prosecuting attorney informed the trial court that he needed to read the enhancement allegations and obtain Appellant's plea to them. The trial court allowed the prosecutor to read the enhancement allegations over defense counsel's objection that "[t]his is very out of order" and "[t]his should have been done before we -- this should have been done -- to do it at the end of the State's case, I don't think it is proper to do it at this point in time." The prosecutor read the enhancement allegations. Defense counsel renewed

his objection "as to the timeliness of this procedure," and Appellant entered a plea of true. The trial court did not err when it permitted the State to "untimely" read the enhancement allegations and Appellant to enter a plea to the allegations. *See Welch*, 645 S.W.2d at 285 (recognizing that failure to read enhancement allegations and take defendant's plea may be cured).

After the close of evidence, defense counsel objected that, "based upon [the prosecutor's] untimely reading of the enhancement paragraph," the trial court's punishment charge "should read not 25 to 99, but instead 5 to 99 or life." The prosecutor expressed his belief that the alleged error had been cured when it read the enhancement allegations and Appellant entered his plea to the allegations. The trial court overruled the objection. Under the charge given to the jury, if the jury found the State's enhancement allegations to be true, it was to assess punishment for a term of not less than twenty-five years nor more than ninety-nine years or life. That was the proper range of punishment because the untimeliness in the reading of the enhancement allegations and the entry of Appellant's plea thereto was cured. And, because Appellant pleaded true to those allegations, the State was not required to reintroduce its punishment evidence. *See Hopkins v. State*, 487 S.W.3d 583, 586 (Tex. Crim. App. 2016); *Wilson v. State*, 671 S.W.2d 524, 525–26 (Tex. Crim. App. 1984) (plea of true to enhancement allegation constitutes evidence and satisfies State's burden of proof). We overrule Appellant's seventh and eighth issues on appeal.

In his first three issues, Appellant challenges the trial court's denial of his motion for new trial. In his first issue, Appellant complains that the trial court erred when it denied his motion for new trial "based on new evidence discovered as a result of the State's failure to disclose exculpatory information prior to trial." Appellant asserts in his second and third issues that the trial court's denial of the motion for new trial constituted an abuse of discretion because the

20

State's suppression of the "exculpatory evidence" violated his due process rights and the mandate of Article 39.14(h) of the Texas Code of Criminal Procedure. *See* CRIM. PROC. art. 39.14(h) (West Supp. 2019) (requiring the State to disclose "any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged"). The exculpatory evidence that Appellant refers to in these three issues relates to the extent of the projectile's penetration—full or partial—into Corporal Wester's protective vest.

To his motion for new trial, Appellant attached appellate counsel's affidavit and an exhibit consisting of a letter from the assistant district attorney—sent after Appellant's trial—informing trial and appellate counsel that the manufacturer of Corporal Wester's protective vest, Safariland, had informed Ranger Lewis that the hole on the inside front panel of the protective vest had been caused by the velocity, heat, and pressure of a projectile creating a rupture inside the vest rather than by the exit of the projectile. In his motion, Appellant specifically argued that this information—of which he and counsel had been unaware—constituted exculpatory, impeachment, or mitigating information that tended to negate his guilt or, alternatively, would have reduced his punishment.

At the hearing on Appellant's motion for new trial, Assistant District Attorney Michael Munk testified that, on December 5, 2017, four days after Appellant was sentenced, Ranger Lewis informed Munk that a Safariland representative had indicated that the projectile that struck the front of Wester's protective vest may not have penetrated the vest's front panel. Munk subsequently informed Appellant's attorneys.

Appellant's lead trial counsel, Michael McLeaish, testified that he believed that the information that Munk had provided would have been critical to

21

Appellant's defense because it would have provided a competing theory to testimony to the effect that Appellant had intentionally shot at Corporal Wester's "heart," which indicated an intent to kill. Appellant's other trial counsel testified that, had he known of the Safariland information prior to trial, he would have suggested to McLeaish that the information be used to show that Appellant had fired randomly from the bedroom, to raise doubt that Appellant had stood over Corporal Wester and had attempted to execute him "with some type of kill shot," and to attempt "to minimize the specific intent" for the capital murder charge.

Ranger Lewis recalled that he had testified at trial that the bullet had penetrated through the vest, and he explained during the hearing on the motion for new trial that it was his opinion that the fact of whether the bullet did or did not penetrate Corporal Wester's vest was irrelevant to Appellant's intent. Corporal Wester testified that neither the assertions made by Safariland's representative nor the depth of the projectile's penetration of his protective vest would change his trial testimony that, while he was lying on his back, he saw Appellant stand over him—"[j]ust feet away"—and fire a shot into his chest in an attempt to kill him.

At the conclusion of the hearing, the presiding judge acknowledged that the information should have been provided to Appellant but concluded that the evidence "[did] not rise to the level that would require a new trial" and "overruled" the motion.

We review a trial court's denial of a motion for new trial for an abuse of discretion. *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). The trial court abuses its discretion when it denies a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.* This is a deferential standard of review that requires us to view the evidence in the light most favorable to the trial court's ruling. *Id.* In determining whether the trial court abused its discretion, we do not substitute our own judgment for that of the trial court, and

22

we uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.*

Appellant's first, second, and third issues turn on his assertions that the new evidence was exculpatory, favorable, and material. Exculpatory evidence is that which may justify, excuse, or clear the defendant from fault, while impeachment evidence is that which disputes or contradicts other evidence. *Harm v. State*, 183 S.W.3d 403, 408 (Tex. Crim. App. 2006); *see Ex parte Lalonde*, 570 S.W.3d 716, 724–25 (Tex. Crim. App. 2019) (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)). Whether exculpatory or impeaching, for evidence that was suppressed by the State to be considered material, there must be a reasonable probability that the result of the trial would have been different if the suppressed evidence had been disclosed to the defense. *Strickler v. Greene*, 527 U.S. 263, 281–82, 289 (1999); *see United States v. Bagley*, 473 U.S. 667, 682 (1985) (declaring that favorable evidence is material and that constitutional error results from its suppression by the government if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different); *see also Brady v. Maryland*, 373 U.S. 83, 87 (1963) (suppression of material evidence violates due process); *Branum v. State*, 535 S.W.3d 217, 225 (Tex. App.—Fort Worth 2017, no pet.) (addressing production under Article 39.14).

The State argues that the new evidence—that the projectile fired into Corporal Wester's chest did not penetrate his protective vest—"was merely impeaching" and provided no justification for a new trial. We agree. Nothing in the record suggests that the projectile's failure—if it failed—to completely penetrate the protective vest would have constituted evidence that Appellant had fired his gun recklessly rather than intentionally. The new evidence was thus not exculpatory and, at best, would have impeached Ranger Lewis's and Corporal Wester's testimony that the projectile had completely penetrated Corporal Wester's protective vest.

Furthermore, we are unable to conclude on the record before us that the result of the trial or the amount of the punishment would have been different if the new evidence had been disclosed to Appellant. Thus, the new evidence was not material. Even in the absence of the suppressed evidence—Appellant received a fair trial that resulted in a verdict worthy of confidence. We overrule Appellant's first, second, and third issues.

We affirm the judgments of the trial court.


JIM R. WRIGHT

SENIOR CHIEF JUSTICE


January 16, 2020

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.